UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUKAS GARZA, | ) |
| Plaintiff, | ) No. 17 cv 4189 |
| v. | ) Magistrate Judge Susan E. Cox |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lukas Garza ("Plaintiff") filed the instant action on June 2, 2017, appealing the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his child's insurance benefits under Title II of the Social Security Act. [Dkt. 1.] The Parties have filed cross-motions for summary judgment. For the reasons below, the Court remands this matter for further proceedings consistent with this Memorandum Opinion and Order. Plaintiff's Motion for Summary Judgment [dkt. 13] is granted; the Commissioner's Motion for Summary Judgment [dkt. 21] is denied.

On January 24, 2014, Plaintiff filed an application for child's insurance benefits, alleging disability as of July 10, 2012. [Administrative Record ("R") 150-51.] Under his application for child's insurance benefits, Plaintiff must demonstrate a disability that began before he turned 22 years old. 42 U.S.C. § 402(d)(1). Plaintiff was 21 years of age on July 10, 2012, his alleged onset date. [R 34.] Plaintiff turned 22 on June 16, 2013. *Id.*

Plaintiff suffers from migraine headaches and postural orthostatic tachycardia syndrome ("POTS"). [R 19.] "POTS is a fairly rare condition that is classified as a form of Inappropriate Sinus Tachycardia [rapid beating of the heart] by the National Institute of Neurological Disorders and Stroke." *Clark v. Colvin*, 2015 WL 629432, at *1 (N.D. Ind. Feb. 11, 2015); *Stedman's Medical*

*Dictionary* 1931 (28th ed. 2006).

> POTS is one of a group of disorders that have orthostatic intolerance (OI) as their primary symptom. OI describes a condition in which an excessively reduced volume of blood returns to the heart after an individual stands up from a lying down position. The primary symptom of OI is lightheadedness or fainting. In POTS, the lightheadedness or fainting is also accompanied by a rapid increase in heartbeat of more than 30 beats per minute, or a heart rate that exceeds 120 beats per minute, within 10 minutes of rising. The faintness or lightheadedness of POTS are relieved by lying down again…POTS often begins after a pregnancy, major surgery, trauma, or a viral illness. It may make individuals unable to exercise because the activity brings on fainting spells or dizziness.

NINDS Postural Tachycardia Syndrome Information Page, National Institute of Neurological Disorders and Stroke, https://www.ninds.nih.gov/Disorders/All-Disorders/Postural-Tachycardia-Syndrome-Information-Page (last visited May 23, 2018).

In December 2010, when Plaintiff was 19 years old, he suffered a head trauma (he was hit in the head by a metal parking gate) and began suffering lightheadedness, near syncope with vertigo, and an elevated heart rate. [R 242.] POTS was suspected by a cardiologist for sinus tachycardia. *Id.* The diagnosis of POTS was confirmed by Dr. Janice Gilden on December 21, 2012. [R 244.] Plaintiff's treating neurologist, Dr. Alex Barboi, who has treated Plaintiff since January 2013, opined in key part that Plaintiff has suffered from POTS, orthostatic hypotension, and migraine headaches since age 19; Plaintiff's condition has slowly deteriorated since Dr. Barboi first began to treat Plaintiff; Plaintiff's conditions are expected to be lifelong and fluctuate in severity; Plaintiff would be expected to have significant problems sustaining any type of full-time work activity; Plaintiff will have both good and bad days, where the bad days would find Plaintiff having difficulty in performing even ordinary activities of daily living and household chores; Plaintiff would have a reasonably marked limitation in his ability to complete a normal workday without interruptions from symptoms related to his conditions; Plaintiff should keep his feet elevated to knee level while sitting to prevent blood pooling and hypotension; Plaintiff needs to lie down every few hours throughout the day; on a good day, Plaintiff could stand/walk 1-2 hours of an 8-hour workday, and sit for 4 hours of an 8-hour workday;

and Plaintiff would have had all these same limitations as of July 10, 2012 (the alleged onset date). [R. 463-68.][1]

Plaintiff's claims under his application for child's insurance benefits were denied initially and again at the reconsideration stage, after which Plaintiff timely requested an administrative hearing, held on February 17, 2016 before Administrative Law Judge ("ALJ") Jessica Inouye [R 34-71.] At the hearing, Vocational Expert ("VE") Richard T. Fisher testified. [R 65-70; 225.] The VE was asked several hypothetical questions by the ALJ. For the purposes of this opinion, the ALJ's hypothetical questions concerning foot elevation are the most pertinent.[2] That entire colloquy is as follows:

> Q. Okay. And this individual also needs to when they're sitting, to elevate the feet to knee level. Is that allowed for those sedentary jobs to be performed?
> A. Knee level.
> Q. Yes. Knee level.
> A. I'd say now he's doing knee level, and I don't think that's possible. Sedentary.
> Q. No work?
> A. No.
> Q. All right.
> A. I mean you can't get -- he's wearing size 8 shoes.
> Q. I guess you can see the size.
> A. I knew this was going to go -- be there. Size 8s, I wear 9s. I can get mine underneath the desk, and put mine up at 15 inches. Anything higher than 15 inches. So he's not a tall guy. But you still couldn't do it to knee level, I don't think.
> Q. All right.
> A. So, I mean, it's just in his case. In general, I'd say 15 inches. If you can get your feet -- if you can get -- if you can get your feet 15 inches, usually underneath a normal-weight work station?
> Q. So 15 inches to me --
> A. 15 inches, yes.
> Q. -- conveys, like, a footstool rather than hip height.
> A. Right.
> Q. Which would be --
> A. Yeah.
> Q. -- straight out from hip height.
> A. Certainly.
> Q. Okay.
> A. I mean I put mine on top of these towers underneath the -- the computer

---

[1] The Court has limited its discussion of the factual background relevant to the analysis provided herein.

[2] As the ALJ variously uses "foot elevation" and "leg elevation," the Court also use these terms interchangeably throughout this Memorandum Opinion and Order.

>>>>>towers here.
>>>>Q. Yeah.
>>>>A. I put my one foot put up there.
>>>>Q. Uh-huh.
>>>>A. And I can get it under there, but that's about it.
>>>>Q. Uh-huh.
>>>>A. That's -- that's a fit.

[R 67-68.] Ultimately, the VE testified that there were the following jobs that existed in significant numbers in the national economy that a hypothetical individual with Plaintiff's limitations (minus foot elevation and lying down every few hours) could perform: telephone quote clerk, charge account clerk, and telephone order clerk. [R 67.]

On December 16, 2015, the ALJ issued a written decision denying Plaintiff disability benefits. [R 17-24.] The ALJ went through the five-step sequential evaluation process to determine whether Plaintiff was disabled. 20 C.F.R. § 416.920(a)(4). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 10, 2012. [R 19.] At step two, the ALJ found that Plaintiff has the severe impairments of postural orthostatic tachycardia (POTS) and migraines. *Id.* At step three, the ALJ held that prior to attaining age 22, Plaintiff did not have an impairment or combination of impairments that met or equaled any impairment found in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R 20-21.] Before step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a) except no climbing ladders, ropes, or scaffolds; occasional climbing ramps and stairs; occasional balancing, stooping, kneeling, crouching and crawling and must be permitted to elevate legs 15 inches or less / stool level. Further, he must avoid all hazards of unprotected heights, moving dangerous machinery and avoid concentrated exposure temperature extremes, especially heat.

[R 21.] At step four, the ALJ concluded that Plaintiff had no past relevant work. [R 26.] At step five, the ALJ adopted the VE's testimony and found that Plaintiff could do other work that existed in significant numbers in the national economy, such as telephone quote clerk, charge account clerk, and telephone order clerk for food and beverage. [R 27.] The ALJ therefore declared Plaintiff not disabled

at any time prior to the date he attained age 22. *Id.*

At step five, The ALJ must provide substantial evidence that a person with Plaintiff's limitations could perform work that exists in substantial numbers in the national economy. *Sombright v. Astrue*, 2011 WL 1337103, at *9 (N.D. Ill. Apr. 6, 2011) (Commissioner has burden to prove that significant jobs are available for a claimant with the plaintiff's RFC); *Moore v. Massanari*, 2001 WL 1558298, at *2 (N.D. Ill. Dec. 5, 2001) (Commissioner must make this showing with "substantial evidence."). At step five in the instant matter, the ALJ adopted the VE's testimony concerning three jobs that were available to a hypothetical individual like Plaintiff, yet the VE never testified as to whether any of these jobs would allow any leg elevation requirement, despite the ALJ including such a requirement in her RFC.

Moreover, having read the VE's response to the ALJ's question concerning foot elevation, the Court is unsure precisely what the VE was saying. First, the VE recognizes that Plaintiff has been elevating his knees during the administrative hearing to such a level the VE acknowledges would be preclusive of all sedentary work. Next, the VE engages in an irrelevant and nonsensical colloquy as to how high he could put his own legs up under a desk based on his own shoe size. During this portion of testimony, the VE also confusingly uses the phrase "it's just in his case" referring specifically to Plaintiff instead of a hypothetical person.[3] The Court finds it nearly impossible to parse what the VE is saying in this portion of the testimony. Further, during this portion of testimony concerning foot elevation, the ALJ does not ask, nor does the VE volunteer, whether the three jobs he identified would even allow for any foot elevation requirement. Nonetheless, both the ALJ's RFC and findings at step five appear to be based on this very portion of the testimony. The Court does not believe the VE's testimony concerning foot elevation qualifies as substantial evidence on which to base the ALJ's conclusions, particularly because the VE did not testify whether a leg elevation requirement would

---

[3] In general, the role of a vocational expert is to provide information regarding the kinds of work and the number of jobs in the national economy a hypothetical person with certain limitations can perform, not to opine regarding a particular claimant's limitations. *Pagos v. Colvin*, 2015 WL 1502923, at *7 (N.D. Ill. Mar. 27, 2015).

erode the job base for the three clerk jobs he identified. The Court remands the case on this basis.

Finally, although the Commissioner argues that "[c]onsidering that the contemporaneous medical records fail to mention any need for plaintiff to elevate his legs during the relevant period, it is not clear why the ALJ included a need to elevate legs in the residual functional capacity finding," this is precisely part of the problem. [Dkt. 22, fn. 3, p.7.] It appears the ALJ had reason to believe Plaintiff might have needed to elevate his legs during the period at issue, or there would be no reason to have engaged in this exchange with the VE. The ALJ did not explain what medical evidence necessitated the inclusion of the leg elevation requirements in either her questions to either the VE or in her RFC, yet they appear in both. It is impossible for the Court to say there was any logical bridge built from the VE's testimony to the RFC. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Instead, it does seem the ALJ adopted a leg elevation limitation just under a height the VE testified would preclude all sedentary work (or, rather, as the VE never actually says 15 inches is preclusive of sedentary work, it appears the ALJ adopted the height the VE would be able to lift his own legs under a desk). The case must be remanded on this basis as well.

On remand, the ALJ should take care to fully develop the record regarding Plaintiff's need to elevate his legs and the effect of his other POTS symptoms on his day-to-day functioning. The ALJ should consider carefully whether to question Dr. Barboi about Plaintiff's limitations during the disability period in question,[4] particularly since both state agency medical consultants "found insufficient medical evidence to assess [Plaintiff's] limitations prior to date last insured of June 15, 2013." [R 25.]

Because the ALJ failed to base her findings at step five on substantial evidence, the Commissioner has failed to uphold her burden to prove that significant jobs are available for a claimant with Plaintiff's RFC. The instant matter must be remanded on this basis. Additionally, as the

---

[4] For the proposition that an ALJ can question or direct interrogatories to a claimant's treating physician, see *Barnes v. Astrue,* 2008 WL 5210753, at *3 (W.D. Ark. Dec. 10, 2008), *et al.*

6

ALJ incorporated suspect VE testimony into her RFC without the support of any logical bridge, the Court must also reverse and remand. This matter is hereby remanded for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's Motion for Summary Judgment [dkt. 13] is granted; the Commissioner's Motion for Summary Judgment [dkt. 21] is denied.

Entered: 6/8/2018

_____

U.S. Magistrate Judge, Susan E. Cox